UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH ZORN-HILL, *et al.*,
                Plaintiffs,

v.

A2B TAXI LLC, *et al.*

                Defendants.

Case No. 19-CV-1058 (KMK)

CHRISTOPHER HUNLOCK, *et al.*,
                Plaintiffs,

v.

A2B TAXI LLC, *et al*.

                Defendants.

Case No. 18-CV-11165 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

      On February 4, 2020, Plaintiff Kenneth Zorn-Hill ("Zorn-Hill") filed a Complaint against A2B Taxi LLC ("A2B"), Everald Gilliard, and Trevonne Gilliard (collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA") and New York Labor Law Article 6 § 190 *et seq* ("NYLL"). (Compl. ("Driver Compl.") (Dkt. No. 1, 19-CV-1058 Dkt.).) On April 5, 2019, the Court ordered a procedure for drivers for Defendants to opt into Zorn-Hill's class allegations. (Dkt. No. 26, 19-CV-1058 Dkt.) From February 19, 2019 through July 8, 2019, 29 individuals indicated their consent to be Plaintiffs to this Action, 28 of whom are still Plaintiffs.[1]

---

[1] These individuals included Jose Rivera, (Dkt. No. 12, 19-CV-1058 Dkt.), Michael Wardlaw, (Dkt. No. 13, 19-CV-1058 Dkt.), Carl Travis, (Dkt. No. 18, 19-CV-1058 Dkt.),

1

Similarly, on November 30, 2018, Plaintiff Christopher Hunlock ("Hunlock") filed a Complaint against A2B and Everald Gilliard, pursuant to the FLSA and NYLL.  (Compl. (Dkt. No. 1, 18-CV-11165 Dkt.).)  On August 21, 2020, the Court ordered a stipulation granting leave to file a First Amended Complaint, which added as a Plaintiff Bonnie Klonowski ("Klonowski"; together with Hunlock, "Dispatcher Plaintiffs"; collectively with Driver Plaintiffs, "Plaintiffs"). (Stip. Regarding Pl.'s Proposed Am. of Compl. (Dkt. No. 15, 18-CV-11165 Dkt.); Proposed First Am. Compl. "Dispatcher Compl." (Dkt. No. 14-1, 18-CV-11165 Dkt.).)

The Parties now seek approval of their proposed settlement.  (Letter from N. Charney, Esq., to Court (Aug. 21, 2020) ("Letter") (Dkt. No. 77, 19-CV-1058 Dkt.); Proposed Settlement Agreements (the "Proposed Settlement") (Dkt. No. 77-1, 19-CV-1058 Dkt.); *see also* (Dkt. Nos. 16 and 16-1, 18-CV-11165 Dkt.).)  For the reasons that follow, the Parties' application is denied without prejudice.

---

Timothy C. Brown, (Dkt. No. 21, 19-CV-1058 Dkt.), Leith Mickens, (Dkt. No. 24, 19-CV-1058 Dkt.), David Rosner, (Dkt. No. 27, 19-CV-1058 Dkt.), Emily Bonaventure, (Dkt. No. 28, 19-CV-1058 Dkt.), Geddes Laird, (Dkt. No. 29, 19-CV-1058 Dkt.), Kwane DelValle, (Dkt. No. 30, 19-CV-1058 Dkt.), Stuart Johnson, (Dkt. No. 31, 19-CV-1058 Dkt.), Michael Randolph, (Dkt. No. 32, 19-CV-1058 Dkt.), Bindu Platts, (Dkt. No. 33, 19-CV-1058 Dkt.), Rodney Strachan, (Dkt. No. 34, 19-CV-1058 Dkt.), Eric Decker, (Dkt. No. 36, 19-CV-1058 Dkt.), Cary Hasner, (Dkt. No. 37, 19-CV-1058 Dkt.), Ricky Cook, (Dkt. No. 38, 19-CV-1058 Dkt.), William Jackson, (Dkt. No. 39, 19-CV-1058 Dkt.), Theodore Hallock, (Dkt. No. 40, 19-CV-1058 Dkt.), Galen Pattillo, (Dkt. No. 41, 19-CV-1058 Dkt.), Kristine Lindsay, (Dkt. No. 42, 19-CV-1058 Dkt.), Ciayan London, (Dkt. No. 43, 19-CV-1058 Dkt.), Nicole Short, (Dkt. No. 44, 19-CV-1058 Dkt.), Barbara J. Thomas, (Dkt. No. 45, 19-CV-1058 Dkt.), Iris Perez, (Dkt. No. 46, 19-CV-1058 Dkt.), Sergio Ulysse, (Dkt. No. 47, 19-CV-1058 Dkt.), Craig Morris, (Dkt. No. 48, 19-CV-1058 Dkt.), Darrell McGriff Jr., (Dkt. No. 49, 19-CV-1058 Dkt.), and Ronald Stowers (collectively with Zorn-Hill, "Driver Plaintiffs"), (Dkt. No. 53, 19-CV-1058 Dkt.).  Larry Flood also consented to be a Plaintiff, (Dkt. No. 35, 19-CV-1058 Dkt.), but on August 20, 2020 voluntarily requested and stipulated to dismissal of the action on his behalf, (Dkt. No. 76, 19-CV-1058 Dkt.).

I.  Background

According to the Complaints, A2B provides non-emergency medical transportation services.  (Driver Compl. ¶ 28; Dispatcher Compl. ¶ 16.)  Plaintiffs allege that they were not (1) informed of their right to overtime pay, (2) paid overtime for work in excess of 40 hours per week, or (3) provided with an appropriate wage notice.  (Driver Compl. ¶¶ 28–45; Dispatcher Compl. ¶¶ 15–29.)  Plaintiffs seek damages, liquidated damages, pre- and post-judgment interest, further relief available under the FLSA and NYLL, and attorney fees.  (Driver Compl. ¶ 54; Dispatcher Compl. ¶ 38.)

II.  Discussion

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016).[2]  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon*

---

[2] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA."  *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

*Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic

4

region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Jambox*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same). Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).[3] To this end, courts require information surrounding "the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award." *Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 176).

---

[3] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation, alteration, and quotation marks omitted).

5

A.  Settlement Amount

The Court finds that the settlement sum is fair and reasonable.  The Parties have agreed to a settlement sum of $105,000 for Driver Plaintiffs and $35,000 for Dispatcher Plaintiffs.  (Letter 2; Proposed Settlement 4–5, 31.) [4]

Regarding Driver Plaintiffs, the Parties state that "if the Drivers are determined to be subject to the taxicab exemption, their recovery would be zero" and that "this was a serious concern for the Plaintiffs."  (*Id*. 3.)  However, "the Parties['] calculation of damages should liability be found for the Driver[] [Plaintiffs] ranged between $22,000 (Defendants' calculation) and $300,000 ([Driver] Plaintiffs' calculation).  (*Id*.)  The Parties further state that, based on a large sample of computer data containing ride times and login/logout information, "the damages for the Drivers is between $22,000 (Defendants' calculation) and $135,000 (Plaintiffs' calculation)."  (*Id*.)  Based on a settlement sum of $105,000, the Parties state that, "[s]etting aside the wage statement and liquidated damages, the Drivers are receiving a substantial portion (more than one third) of Plaintiffs' own best case scenario calculation[,] and more than three quarters (75%) of the damage if the data is invoked."  (*Id*. 4.)

Regarding Dispatcher Plaintiffs, the Parties state that "the range of recovery is between zero (no liability is found) and $15,000 plus liquidated damages for Klonowski and $35,000 plus liquidated damages for Hunlock."  (*Id*. 3.)  Based on a settlement sum of $35,000, and subtracting $10,000 in attorneys' fees, the Parties state that, again "[s]etting aside the wage notice damages and liquidated damages[,] the two Dispatchers are receiving fifty percent (50%) of their best-case scenario damages."  (*Id*.)

---

[4] The Proposed Settlement includes two proposed agreements, each with separate page numbers.  (*See generally* Proposed Settlement.)  To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

The percentages provided by the Parties undercount the Plaintiffs' alleged damages and best-case return at trial, for two reasons. First, they do not include liquidated damages, which are available "in an additional equal amount" as unpaid overtime compensation under the FLSA. 29 U.S.C.A. § 216(b). (*See* Letter 3.) Second, the percentages also do not include possible statutory damages of up to $5,000 per Plaintiff under New York law for failure to provide wage notices. N.Y. Lab. Law § 198. (*See* Letter 3.) Thus, the best-case return for the Driver Plaintiffs is $745,000, and for the Dispatcher Plaintiffs is $110,000.[5]

The recovery amount of $25,000 for the Dispatcher Plaintiffs is consistent with settlements that have been approved by courts in the Second Circuit. Several courts have approved settlements that provide around one-quarter or one-third of total alleged damages. *See Garcia v. Cloister Apt. Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019) ("[P]laintiffs' net settlement ... represents more than 28% of their total alleged damages and more than 72% of their claimed unpaid wages. This percentage is reasonable, especially given plaintiffs' potential obstacles to recovery."); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery). Consistent with these decisions, the proposed $35,000 settlement will allow Dispatcher Plaintiffs to recover $25,000, which is slightly less than one-fourth of $110,000. Thus, the Court finds that this settlement sum is fair.

By contrast, the proposed settlement amount for the Driver Plaintiffs is lower, as a percentage of their alleged damages, than the amount provided in settlements typically approved

---

[5] Total best-case judgment for Driver Plaintiffs is $300,000 (actual damages) plus $300,000 (liquidated damages) plus $145,000 (statutory damages). Total best-case judgment for Dispatcher Plaintiffs is $50,000 (actual damages) plus $50,000 (liquidated damages) plus $10,000 (statutory damages).

by courts in the Second Circuit.  The proposed $105,000 settlement will allow Driver Plaintiffs to recover $75,000, which is slightly more than 10% of Driver Plaintiffs' total alleged damages of $745,000.  Nonetheless, two factors cause the Court to deem this settlement amount fair as well.

First, the Parties state that "Defendants were able to show that they in fact did provide the statutory wage notices required by law, which comprised, for most Plaintiffs, a claim for $5,000 which is not viable."  (Letter 3.)  This suggests that the Driver Plaintiffs' realistic best-case scenario is $600,000, not $745,000.  The proposed recovery amount of $75,000 is 12.5% of the best-case scenario of $600,000.  This amount is not dramatically lower than similar settlements approved by courts in this district.  *See Gervacio v. ARJ Laundry Servs. Inc.*, No. 17-CV-9632, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (approving settlement amount "equal to approximately 20 per cent of total possible recovery and approximately 43 percent of [the p]laintiff's base damages")

Second, Driver Plaintiffs face major factual and legal litigation risks.  They face factual risk because a sampling from "a large volume of computer data" suggests that the Driver Plaintiffs' lost wages are $135,000, rather than $300,000.  (Letter 3.)  Courts in this district have noted that factual litigation risks may result in a lower reasonable settlement amount.  *See Beckert v. Ronirubinov*, No. 15-CV-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving award of approximately 25% of maximum recovery where the plaintiff faced risks from "lack of documentation and conflicting witness support" (quotation marks omitted)); *Vargas Ortiz v. Three Star on First, Inc.*, No. 19-CV-928, 2019 WL 4013981, at *2 (S.D.N.Y. Aug. 26, 2019) (approving settlement amount of 23.4% of the plaintiff's best-case recovery where "records show[ed] that [the p]laintiff did not work for . . . as long as alleged").  Driver

Plaintiffs also face legal risk because they may be "exempt from overtime under the FLSA taxi exemption . . . . While the Second Circuit has not yet spoken on this question as it relates to non-emergency medical transportation, . . . there is a serious risk that the same analysis would apply." (Letter 3.)  The Court considers the settlement amount in light of "the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016).  Indeed, one court in the Second Circuit has approved a settlement of only 7% of the plaintiff's best-case scenario, based on a similar combination of factual and legal risk.  *See Aguilar v. N & A Prods. Inc.*, No. 19-CV-1703, 2019 WL 5449061, at *1–*2 (S.D.N.Y. Oct. 24, 2019) (approving settlement of $40,000 where the plaintiffs estimated potential recovery was $570,000, based on, inter alia, a dispute about the plaintiff's exempt status and number of hours worked).

### B.  Attorney Fees

The Court finds that the attorney fees and costs requested by Plaintiffs' Counsel are reasonable.  Under both FLSA and the New York Labor Law, a successful plaintiff—including one who settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), N.Y. Labor Law §§ 198, 663(1)).  In the Second Circuit, courts may calculate attorneys' fees using one of two methods: the "lodestar" method or the "percentage of the fund" method.  *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  "Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund." *Kefi*, 2015 WL 4006896, at *3.  "Under the lodestar method, 'the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.'"  *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d

573, 590 (S.D.N.Y. 2015) (footnote omitted) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). "After the computation is done, 'the district court may, in its discretion, increase the lodestar by applying a multiplier based on "other less objective factors," such as the risk of the litigation and the performance of the attorneys.'" *Id*. at 590–91 (quoting *Goldberger*, 209 F.3d at 47). "Although [the Second Circuit] ha[s] acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel*, 595 F.3d at 417 (some quotation marks omitted). Under either approach, courts draw on the following considerations—commonly known as the "Goldberger factors"—when assessing the reasonableness of attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (alteration and quotation marks omitted).

When requesting attorneys' fees in an FLSA case, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336 (S.D.N.Y. 2012). Although courts may elect to award fees by either considering the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended— or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-

CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, under the Proposed Settlement, Plaintiffs' Counsel seeks an award of $40,000 in attorneys' fees and costs, (Letter 5), with $30,000 coming from Driver Plaintiffs' recovery and $10,000 coming from Dispatcher Plaintiffs' recovery, (*id.* 2). This is less than 30% of the total settlement of $140,000. (*Id.* 5.) This percentage is appropriate, as courts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third of the total recovery. *See Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), adopted by 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016). Separately, Plaintiffs' Counsel has submitted billing records, which based on a billing rate of $500/hour suggest a lodestar sum of more than $67,000. (Letter 5; Dkt. No. 77-4, 19-CV-1058 Dkt.; Dkt. No. 16-4, 18-CV-11165 Dkt.) Counsel's requested award of $40,000 is significantly lower than this sum. Therefore, the Court approves the requested attorneys' fees and costs.

C. Non-Disparagement Clause

11

The Court finds that the Proposed Settlement's non-disparagement clause is reasonable. In this clause, the Parties mutually "agree not to say or publicize things that are insulting or disparaging about the other Party." (Proposed Settlement 4, 30.)  The clause also contains a carve-out: "[e]ach of the parties are free to make truthful statements about their experience litigating their case (except as to statements made at the confidential mediation held on July 9, 2020)." (*Id.*)  Non-disparagement clauses are valid, so long as they contain such a carve-out. *Chandler v. Total Relocation Servs., LLC*, No. 15 CIV. 6791 (HBP), 2017 WL 3311229, at *4 (S.D.N.Y. Aug. 2, 2017); *Nights of Cabiria*, 96 F. Supp. 3d at 180 n.65.  Thus, the Court approves the non-disparagement clause.

### D.  Non-Publicity Clause

The Court finds that the Proposed Settlement's non-publicity cause imposes reasonable restrictions on affirmative contact with media, but unreasonable restrictions on use of social media.  This clause states that "Plaintiffs, on behalf of themselves and their counsel, agree not to take affirmative steps to contact the media or utilize social media to publicize th[e] [Proposed Settlement] or its terms." (Proposed Settlement 4, 30.)  The clause contains two specific carve-outs.  First, "[i]f contacted by the media regarding th[e] [Proposed Settlement], Plaintiffs and Plaintiffs' [C]ounsel are free to make truthful statements about their experience litigating their case." (*Id.*)  Second, Plaintiffs' Counsel is permitted to post a brief description of the lawsuit and settlement to its website, including a hyperlink to the case dockets. (*Id.* 4, 30–31.)

"The overwhelming majority of courts reject the proposition that FLSA settlement agreements can be confidential." *Armenta v. Dirty Bird Grp., LLC*, No. 13-CV-4603, 2014 WL 3344287, at *2 (S.D.N.Y. June 27, 2014); *see also Nights of Cabiria*, 96 F. Supp. 3d at 177 (same).  This is because "a provision that prohibits Plaintiff's right to discuss the settlement is

incompatible with the purposes of the FLSA, namely, to ensure that workers are aware of their rights." *Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2019 WL 117466, at *3 (S.D.N.Y. Jan. 7, 2019) (quotation marks omitted) (collecting cases).

Courts are split on whether agreements that limit plaintiffs' ability to contact media are permissible. *Compare Chun Lan Guan v. Long Island Bus. Instute, Inc.*, No. 15-CV-2215, 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (approving media restriction because "[a]lthough these provisions do place some limits on Plaintiffs' ability to discuss the settlements, the limits are not absolute and do not restrict Plaintiffs' general ability to discuss the settlements"); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-475, 2017 WL 2778029, at *4 (E.D.N.Y. June 26, 2017) ("[T]he confidentiality provision is not highly restrictive because it pertains only to the [a]greement . . . ."); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (same, and also noting that "since no one can force Plaintiffs to opine on the case in the future anyway, it is by no means irrational or improper for Plaintiffs to compromise words for dollars as part of a global, arms-length settlement"); *with Garcia v. Good for Life by 81, Inc.*, No. 17-CV-07228, 2018 WL 3559171, at *4–*5 (S.D.N.Y. July 12, 2018) ("Barring plaintiffs from contacting the media is thus not a trivial infringement on their ability to spread the word to other workers who may then be able to vindicate their statutory rights." (citation and quotation marks omitted)). Courts are also split on whether FLSA settlements may limit plaintiffs' ability to post to social media. *Compare Burczyk v. Kemper Corp. Servs., Inc.*, No. 15-CV-1483, 2017 WL 11511165, at *1 (E.D.N.Y. Mar. 28, 2017) (rejecting proposed social media restriction because "considering the commonality of which individuals communicate over the internet, preventing Plaintiffs from posting 'on any social media, website, blog or other form or Internet activity' places a substantial burden on their

13

ability to openly discuss their experience"); *Chung v. Brooke's Homecare LLC*, No. 17-CV-2534, 2018 WL 2186413, at *2 (S.D.N.Y. May 11, 2018) (finding "too broad" a provision that applied restrictions to social media); *with Flores v. Studio Castellano Architect, P.C.*, No. 15-CV-9158, 2017 WL 4417697, at *3 (S.D.N.Y. Oct. 2, 2017) (approving a non-disclosure provision "limited to an agreement not to publicize the terms of the settlement in news or social media"); *Lola*, 2016 WL 922223, at *2 (finding restriction on social media "is not absolute" and does not limit "[plainitffs'] general ability to discuss the [s]ettlement").

Here, the restriction on affirmative steps to communicate with the media is permissible. First, it does not prevent Plaintiffs from discussing the Proposed Settlement with their colleagues and friends who may face similar uncompensated overtime. Second, it limits Plaintiffs' ability to speak with the media only about the Proposed Settlement itself. Plaintiffs may still take affirmative steps to contact the media about matters outside the Proposed Settlement, such as their allegations. Third, the Proposed Settlement allows Plaintiffs to respond to media inquiries with "truthful statements about their experience litigating their case." (Letter 3.) This restriction is significantly less onerous than no-media restrictions approved by other courts, which in at least two cases required a scripted response to media inquiries. *See Daniels v. Haddad*, No. 17-CV-8067, 2018 WL 6713804, at *2 (S.D.N.Y. Dec. 17, 2018) (requiring the plaintiffs, if contacted by the media, to "simply refer the inquirer to the public dockets" (record citation and quotation marks omitted); *Lola*, 2016 WL 922223, at *2 (requiring the plaintiffs to say "no comment" or "[t]he matter has been resolved" (record citation and quotation marks omitted)).

The Court finds that the restriction on use of social media is impermissible. Since individuals regularly use the internet to communicate with friends, colleagues, and family, restricting Plaintiffs ability to use it "places a substantial burden on their ability to openly discuss

14

their experience litigating the lawsuit and entering into the [Proposed Settlement]." *Burczyk*, 2017 WL 11511165, at *1. This is incompatible with the statutory purpose to "ensure that workers are aware of their rights." *Arango*, 2019 WL 117466, at *3. It is true that the Proposed Settlement restricts only efforts "to publicize" the agreement. (Proposed Settlement 4, 30.) However, this provides little comfort "[g]iven the broad range of meanings which can be imputed to the word 'publicize[.]'" *Alfajr Printing & Pub. Co. v. Zuckerman*, 646 N.Y.S.2d 858, 861 (N.Y. App. Div. 1996).[6]

### E. Release

The Proposed Settlement contains a release clause. The release states: "Plaintiffs, for themselves and Releasors, knowingly and voluntarily release and forever discharge Releasees of and from any and all Wage Claims of any kind or nature, whether known or unknown, arising up to and through the date of final approval by the Court of this [Proposed Settlement], which may exist against Defendants . . . ." (Proposed Settlement 4, 31.) "Wage Claims" are defined for Dispatcher Plaintiffs as "any and all claims Plaintiffs have made pursuant to the [FLSA] and the [NYLL]." (*Id*. 28.) For Driver Plaintiffs, "Wage Claims" includes the above as well as "any additional FLSA or NYLL claims concerning the hours worked by Plaintiffs or wages paid (or not paid) to Plaintiffs." (*Id*. 2.) The Parties note that the release is broader than the allegations in the Complaint, (Driver Compl.), because "Plaintiffs identified other claims . . . that were not part

---

[6] Courts in the Second Circuit have found that restrictions binding both plaintiffs and defendants are more likely to be reasonable. *See, e.g.*, *Good for Life by 81*, 2018 WL 3559171, at *5 (rejecting no-media provision that "applie[d] to [the] plaintiffs only"); *Chung*, 2018 WL 2186413, at *2 (noting that "[the] provision imposes equal obligations on both [the p]laintiffs and [the d]efendants"); *Haddad*, 2018 WL 6713804, at *2 (finding "the non-disclosure provision benefits [the p]lainitffs as well as [the d]efendants"). Here, the proposed restriction applies only to Plaintiffs. (Proposed Settlement 4, 30.) This factor strengthens the rationale for rejecting the proposed social media restriction.

15

of the Complaint." (Letter 5.) Releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d 199 at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted). Here, "while broad, the terms of the release[s] . . . relate[] specifically to wage and hour issues without encompassing, for example, prospective [or] discrimination claims." *Pucciarelli*, 2017 WL 2778029, at *3 (citations and quotation marks omitted); *cf. Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL claims of any kind or nature").[7] Therefore, the Court approves the Release.

### III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement is denied without prejudice. The Parties may reapply for approval of a settlement that eliminates or tailors the provision restricting use of social media.

SO ORDERED.

DATED: September 17, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[7] This Court has previously stated that "any release provision must be limited to the claims at issue in this action," *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015). In *Sengupta Food* and other cases like it, this Court and others rejected proposed settlements that seek to "erase all liability whatsoever in exchange for partial payment of wages." *Id*. (citation and quotation marks omitted); *see also Flood v. Carlson Restaurants Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Camacho*, 2014 WL 6985633, at *4. As discussed, the release clauses here is appropriately narrowed.